on the day calendar which is 20-1158 Reynolds versus Cook. Thank you very much. Mr. Scully. Good afternoon, Your Honor. Good afternoon, Your Honors, and may it please the Court. Joseph Scully on behalf of the appellant. I want to start by stating the obvious. I have a really hard case. Most people have very little sympathy for a lawsuit intended to provide pornography to incarcerated criminals. I can tell you that over the years I got a lot of grief of this around the dinner table and then on Zoom from my parents. Most people don't think it's a laudable or useful use of federal court's resources. In addition, that case is made all the harder because Chief Judge Underhill wrote an excellent comprehensive opinion. But this case is not about pornography. This case is about whether a small group of unelected government officials can deny prisoners, citizens, of their First Amendment rights without conducting a meaningful investigation or deliberation based on their own personal sensibilities of what is best. The facts, as found by Chief Judge Underhill, established that the committee did little more than mouth the words safety and security, rehabilitation, and hospital work environment. And despite his thoughtful opinion, Chief Judge Underhill was wrong in his legal conclusions based upon the facts as he found them. The Department of Corrections stated reasons for excuses and are not valid rational basis for depriving citizens of their First Amendment rights in this context. Prisoners don't check all of their constitutional rights at the prison gate. Governmental restrictions of prisoners' constitutional rights is impermissible absent a valid rational connection between that restriction and a legitimate governmental interest put forward to justify that restriction. While the three rationales cited by the district court here could be legitimate technological interests, the facts found by the district court established that there is not a valid rational connection between those interests and this ban on nude photos. First, I want to start with the last rationale that the court cited to, which the court explained to be the most persuasive argument advanced by the state. That's the hospital work environment rationale. Unlike the other rationales, the committee's recommendation memo, which is at Joint Appendix 97, actually touches upon this rationale in some detail. But it still fails to pass constitutional muster. First, let's be honest here. Prisons are inherently hostile work environments. They are tough places for both prisoners and guards. And guards have to engage in all manner of conduct and activities that wouldn't fly in any other workplace. Guards have to perform strict searches of prisoners, which are often incredibly invasive. And they have to take in the showers and do lots of other things that wouldn't be allowed in other work contexts. And while state employees should not be subject unnecessarily to a hostile environment, to a certain degree, their morals and their sensibilities have to give way when their jobs require them to enter someone else's home. Here, the prison cell. This is not your typical workplace. Under the state's rationale, the Veterans Administration could restrict nude photographs in its long-term care facilities based upon complaints from doctors that allowing veterans to possess pornography creates a hostile work environment. But the real issue that the state cited as creating a hostile work environment is not with the possession of nude photos, but with the actions of a limited number of inmates. These inmates exposed themselves to guards, performed lewd acts in front of the guards, and hung nude photographs on walls and lockers. But the state already had rules in place against such actions. The Department of Correction already banned the hanging of nude photos on walls and prohibited inmates from engaging in lewd acts in front of guards. If the state legitimately determined that there was too much breaking of those rules by these limited number of inmates, the state had less restrictive means by which to ensure those inmates started complying with those rules. The state could have increased the severity of punishment for those bad acts and subject those bad actors to more time in punitive segregation. Here, the state has used rule breaking by a few inmates to justify restricting access to a form of protected publications by the entire prison population based on what their primary witness, Ms. Redden, admitted was an effort to change the way prisoners think about themselves, about women, and about sex. The state was trying to change how prisoners thought in an effort to change how they acted, even though the state already had means by which to discourage such bad action. The state's witnesses admitted that the ban's intended purpose was to limit the prisoners' reading materials in an effort to change the way they think. In Ashcroft v. Free Speech Coalition, Justice Kennedy said, First Amendment freedoms are most in danger when the government seeks to control thoughts or justify its laws for that impermissible end. If the First Amendment does not prohibit such state actions restricting constitutional rights, then it opens the door to the tyranny of an administrative state that can justify the restrictions of liberties based solely on say-so of a small group of unelected officials that certain ideas may cause lawlessness. The people have given the government the authority to punish conduct, bad actions, but the people have not ceded the government authority to limit what people think, read, or read in an effort to prevent that bad action, certainly not without more than what was before the district court here. Now, the district court cited to common sense as supporting its conclusion, but common sense must give way to actual facts, and there was no evidence at trial that pornography was regularly used by prisoners in connection with indecent acts. Indeed, inmate Sosa testified as to his practice of committing such acts and confirmed that he did not use sexually explicit material to do so, and further that his conduct continued and in fact increased after this ban was put in place. Excuse me, you have one minute left. Thank you. So, nude pictures have nothing to do with this conduct, and the facts established that there were less than four percent of tickets were issued in response to such bad acts. The prison population was on the order of 14,000 to 17,000, and fewer than 500 tickets were issued during the course of any given year. The second argument was that safety and security required that these bad acts, that pornography be restricted, and no one can doubt that we should strive to keep prisons safe, but the problem arises when unelected government officials say that a particular type of speech has made prisons unsafe, especially when the state has so many other tools available to it to prevent and punish that action that actually make the prisons unsafe. The publications do not cause the prisons to be unsafe. It's the actions of a small number of inmates that cause it to be unsafe. In his famous dissent in Abrams v. United States, Justice Oliver Wendell Holmes concluded by stating, we should be eternally vigilant against attempts to check the expressions of opinions that we loathe and believe fraught with death, unless they so imminently threaten immediate interference with the lawful and pressing purposes of the law that an immediate check is required to save the country. I have no doubt. Thank you, Your Honor. Thank you very much, and we'll hear from Ms. Kindle. Yes, Your Honor, do you want questions for the appellant first, Your Honor? Sure enough. Thank you. Does Judge Kearse have any questions? No questions. Thank you. And Judge Bianco? I just have a couple of questions. Mr. Scully, you referenced the idea that the judge used common sense, but you had a bench trial here and had testimony from a number of witnesses about the hostile work environment before the ban and how it improved after. Former Deputy Warden Kornauer testified before the ban, very threatening environment. After, very positive. Deputy Commissioner Monica Rinaldi said before the ban, very sexually charged environment. After, morale has improved. Captain Julie Kunkel said, pretty gross being a female officer before the ban. So he had that testimony, which obviously you can credit for what the inmates were saying. The tickets went from over 400 in 2010, 2011, 2012 to under 200 for the next five years. So isn't that a sufficient connection to show that the hostile work environment before the ban was minimized by the ban? Your Honor, that's an excellent point. The evidence showed that the prison population actually decreased during the same time that the tickets went down, and there was no evidence put forward by the state that established an actual causal connection between the number of tickets that were issued after the ban and the ban itself. Why can't he credit the testimony, the people who were working there? Because in the end, it's still anecdotal evidence with respect to the effect that pornography had on the conduct. The evidence established that- Go ahead, you can finish. The evidence established that there was no testimony that directly linked any pornographic material to any of the lewd bad acts. All right. You didn't get to this, but I just wanted to quickly just respond to, on the rehabilitation for sex offenders. Again, he had Aileen Redden's testimony, who oversees the sex offender treatment program, that pornography completely undermines the basic tenets of the treatment. She cited a study noting a correlation between the sexual behavior and the viewing of nonviolent pornography. Even your expert noted that, he called it a minority of articles, support Redden's view. Again, the district judge had a trial and credited that as another reason. What's wrong with that? The district judge relied largely on Ms. Redden's testimony, and the evidence established that Ms. Redden provided to the committee a memo including her research on this issue. That memo is at joint appendix 103, and I encourage the court to take a look at it, because that memo that she submitted was dated a year earlier than the committee was formed, and the information that she cited does not actually support the conclusion drawn here. Now, I agree with the point I think Your Honor is trying to make that, hey, listen, if I try to say that Chief Judge Underhill erred in how we interpret the facts, I'm not going to convince this panel of that. But even accepting the facts as found by Chief Judge Underhill, it doesn't pass constitutional muster here. It opens up the door to the state arguing in the future that, hey, we can restrict any sort of publication because the committee we formed decided that reading materials about the Black Lives Matters movement would cause racial... Under your interpretation of the Constitution, the federal ban would be unconstitutional as well, and all the four other circuits who've had published opinions and two unpublished opinions, they would all have to be wrong too, right? No, no. The point we're making here is that based upon the record that the state developed in this case, it was insufficient for them to justify the ban on nude pictorials in this instance. And there's a lot of differences in the bans in other jurisdictions. But importantly here, what the state did was say, hey, look it, all these other jurisdictions are imposing bans because of safety and security, rehabilitation, and hostile work environment. We could just say that too. That's what it really amounted to in this case. All right. All right. Thank you, Mr. Scully. Thank you, Your Honor. Okay. Ms. Kindle. Good afternoon, Your Honors. May it please the court, I am Claire Kindle, Solicitor General for Connecticut, representing the defendants' affilies. Eight courts of appeals, including this one, have upheld similar bans to Connecticut's 2012 ban on visual pornography and full nudity in its prisons. But this case is unique in one very important respect. Those other cases upheld visual pornography bans either at the motion to dismiss or the motion for summary judgment stage. Here, the district court held five days of trial, heard from 15 different witnesses, and admitted dozens of exhibits into evidence. After that full trial, the district court issued a 54-page decision with specific findings of fact and held, as a matter of fact, that plaintiffs had failed to satisfy their burden of proof. To the extent that constitutional right is implicated, the 2012 ban fully satisfied the Turner factors. And because there was a full trial on the merits, the standard of review here is clearly erroneous. And so opposing counsel is correct that he has a case. Because the court found, as a matter of fact, that Turner was satisfied. The standard is not the least restrictive. It is, in fact, Turner expressly rejected a least restrictive standard. And plaintiff has the burden of proof. And plaintiffs failed to meet that. So the district court's decision after trial should be affirmed for three reasons. First, the ban satisfies the Turner test, even without the artistic exception. Second, the artistic exception was not vague, either facially or as applied. And third, plaintiffs failed to cite a case where a visual ban was overturned. Rather, plaintiff relies on two district court cases where written books were pulled from prison libraries, but Playboy was later upheld. So plaintiffs merely are challenging the district court's factual findings, not its legal interpretations. So for example, set forth in the reply brief, they contend that the 2012 ban was not for purposes of a hostile work environment, safety or rehabilitation, but because of some sort of some people's moral values. They made the exact same argument at court rejected it. Plaintiffs contend that it doesn't help prison safety. They made the exact same arguments at trial. And the district court held that it did impact self shakedowns and the priming of sexual assault victims. Plaintiffs contend that's not related to rehab. The trial court directly held it directly related to the rehabilitation of sexual offenders who are 20% of the population and spread out throughout the facility. And with respect to hostile work environment, plaintiffs seem to say that the court shouldn't have believed the women who testified or that they should have just toughened up and should have adopted a least restrictive standard. And finally, plaintiffs asked this court to believe their expert and not the DOC professionals and the DOC expert. These are all fact determinations, as there was ample evidence to support the plaintiffs cannot establish they were clearly erroneous and the decision below has to be affirmed. So turning to the Turner factors, obviously the Turner factors are regulation is valid if it's reasonably related to a legitimate penological interest and it is the plaintiff's burden to establish that it is not reasonably related. The four factors are clearly satisfied by the district court's factual findings. First factor, which looms large, is the rationally related to a legitimate and neutral government interest. The district court found as a factual matter that hostile work environment, prison safety, and rehabilitation were all legitimate concerns and then found that all of those factors were reasonably and rationally related to the visual dam. The second factor is do the inmates have an alternative means of exercising their rights? There is no limit on reading materials. It's a visual dam. So written erotica, as long as it's not concerned rape, child porn, or bestiality, is perfectly is available to Connecticut's inmates. So yes, Connecticut's inmates can read James Joyce's Ulysses and D.H. Lawrence's Lady Chatterley's and also view Victoria's Secrets and other lingerie catalogs and Sports Illustrated swimsuit editions. The third factor, the cost of accommodating the rights on others. Here I think hostile work environment has to predominate the conversation. Title VII requires that once an employer knows it's a hostile work environment, they must address it. And the evidence was 16 years later, Captain Julie Kunkel recalls the smells and sounds of gunning while she walked to tears. Former warden Ann Knoyer testified about gunning and sexual harassment and how it was a very difficult and threatening environment for anyone, not just women. Deputy Commissioner Monica Rinaldi said porn was everywhere and that the purposes for the ban were safety, rehab, and the working environment. And even one of the inmates testified that it was not a pleasant atmosphere for women. That was Victor Smalls and that's at DA 98. And finally, the fourth Turner factor wasn't an exaggerated response. The district court properly found, as a matter of fact, that completely unraveling of the policy would reinstate a hostile work environment. The plaintiff doesn't really talk much about the artistic exception and the district court found that the policy was probably permissible even without the exception. But the district court also heard extensive evidence about how the media review board's process and upheld that process as a matter of fact, found that other systems had exceptions and was impressed both with the humility and the efforts to be consistent by the board. And the number of appeals that were overturned, I think shows that the process was a robust process and not just a rubber stamp. Finally, all other courts have upheld similar visual bans. The 1st, 2nd, 3rd, 4th, 7th, 9th, 10th, and DC circuits have upheld similar visual bans on nudity and pornography for the Federal Bureau of Prisons, the states of New York, New Jersey, Massachusetts, Virginia, Utah, and Arizona's Maricopa County. Prisons are unique as places where inmates live and men and women work. And in no other context would we be arguing that full nudity and visual pornography should be pervasive throughout a workplace. After a full trial on the merits, hearing experts, and fact witnesses, the district court found, as a matter of fact, that the Turner elements had been satisfied and plaintiffs had failed to satisfy their burden of proof. Plaintiffs here are merely arguing that the trial court should have believed them rather than the DOC witnesses. Because there is ample evidence to support the district court's factual findings, the decision below must be affirmed. And I am available for questions as the court wishes. Thanks very much. Judge Kears? No questions. Thank you. Judge Bianco? I have no questions. Thanks. I have one question, Ms. Kendall, to make sure that I understand your claims here. Is it your view that the reduction of a hostile work environment is a legitimate penological objective? Yes, Your Honor. And the Ninth Circuit on Bonk and Mauro found that as well. And as far as you know, we've never held that the reduction of a hostile work environment is a legitimate penological objective, right? I don't believe that the Second Circuit has expressly addressed that issue, Your Honor, no. But the Ninth Circuit on Bonk certainly has. Okay. Thanks very much. We'll hear from Mr. Scully, who is reserved two minutes. Thank you, Your Honor. Your Honors, I want to start with that last point. The reduction of a hostile work environment. The testimony that the state cited from inmate Smalls was not discussing the environment pre-ban. It was discussing the environment after the ban. Inmate Smalls said that it was not a pleasant environment even today for female correctional officers. And the state already makes accommodations to deal with this. Prisoners are often subject to strip searches. And female correctional officers are not required to engage in that strip search. They're not required to engage in the very intrusive, physically intrusive process of checking an inmate to make sure that he has not objects on his body or in his body. And the state already has regulations in place to prevent inmates from posting nude photos on their walls. They can get in trouble for that. They already have regulations in place for bad actions like lewd conduct in front of female correctional officers. They can get in trouble with that. And the evidence established that even when inmate Smalls posted five pieces of paper, they still engaged in the very disgusting and horrible lewd acts that the state says justifies restricting other prisoners' access to this protected First Amendment class of publication. Here the state is saying because fewer than 4% of the prison population each year engages in bad conduct, lewd conduct, we can deprive the entire prison population of their First Amendment rights. That would be like saying, hey, listen, because there's a bunch of bad actors who always get into fights when they're let out into the yard, we're going to say that everyone has to remain in their cell. This court would never sustain that sort of restriction. And it wouldn't result in a complete unraveling of the state's the state already had a policy in place that was more than adequate and also protected inmates' First Amendment rights. If this court remains vigilant and protects the First Amendment rights of prisoners, we will simply go back to the old policy and the state can then engage in the proper process of investigating this matter and deciding whether there is a more penalogical interest. And with that, Your Honors, I have nothing further to add unless there's additional questions. Judge Kearse, any questions? Judge Bianco? No, thanks. All right, we'll reserve decision in Reynolds against Cook and we'll turn.